IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOEL SERRANO,<br><br>        Plaintiff,<br><br>            v.<br><br>RITZ CARLTON HOTEL COMPANY<br>SAN JUAN, INC.,<br><br>        Defendant. | CIVIL NO.: 08-1265 (FAB) |

**REPORT AND RECOMMENDATION**

**I.    Procedural Background**

On March 4, 2010, the court entered an order stating that Carlos Murati ("Murati") and Ramón Abreu ("Abreu"), non-parties to this action, shall personally pay to defendant Ritz Carlton Hotel Company San Juan, Inc. ("Ritz Carlton" or "defendant") all attorney's fees, costs and expenses incurred by defendant Ritz Carlton in its efforts to depose and obtain documents from Murati and Abreu.  (Docket No. 72).  Murati requested reconsideration of the court's order and Ritz Carlton filed an opposition to Murati's motion for reconsideration.  (Docket Nos. 77 and 80).  The court proceeded to schedule an evidentiary hearing to be held on April 23, 2010, but the same was continued to be held on May 19, 2010 (Docket Nos. 81 and 87).

On May 17, 2010, Murati filed a motion disputing Ritz Carlton's characterization of the upcoming May 19, 2010 hearing as academic and reiterating his request for reconsideration of the imposition of sanctions consisting of attorney's fees, costs and expenses. (Docket No. 93).  On that same date, the court "noted" Murati's second motion for reconsideration, stated that he could make appropriate arguments once Ritz Carlton filed its motion for costs and attorney's fees, set aside the

evidentiary hearing as academic, dismissed the case with prejudice, retained jurisdiction regarding the issue of attorney's fees and costs related to Murati and Abreu, and entered judgment. (Docket Nos. 94-96).

Pending before the court is defendant Ritz Carlton's motion for attorney's fees and costs against Murati for the amount of $20,262.55 and against Abreu for the amount of $9,986.05, Murati's response in opposition, and Ritz Carlton's reply. (Docket Nos. 97, 98, 103). In order to clarify some of the issues raised, an evidentiary hearing was held on November 1, 2010. (Docket No. 116). No response in opposition has been filed by Abreu to defendant's motion. For the reasons explained below, Ritz Carlton's motion for attorney's fees and costs should be GRANTED.

## II.   Analysis and Discussion

### A.   Ramón Abreu

As to Abreu, defendant was initially unable to serve him with process because plaintiff did not provide his contact information. (Docket No. 55-8; 39-2, p.12 ¶11; 39-3, p.3, ¶11). Although Abreu was eventually served, he "just forgot" to attend his deposition. (Docket No. 76). Abreu, however, cashed the check tendered to him by defendant in payment of witness fees and mileage for the deposition he did not attend. (Docket No. 80-2). The expenses incurred by Ritz Carlton specifically as to Abreu are detailed in defendant's motion submitting a memorandum of attorney's fees and costs totaling $2,337.30. (Docket No. 97-3).

Ritz Carlton has also included a breakdown of fees and costs related to both Murati and Abreu totaling $15,297.50, which they request the court to split in half as to each witness. (Docket No. 97-1). Therefore, Ritz Carlton requests that of this portion of fees and costs incurred as to both Murati and Abreu, $7,648.75 be imposed upon Abreu. A review of the timesheet submitted justifies this approach, but for one entry that clearly relates exclusively to Murati:

| Date | Timekeeper | Time Worked | Work Description | $ Amount |
|---|---|---|---|---|
| 4/13/2010 | RQC | 0.10 | Telephone conference with process server re: upcoming appearance at evidentiary hearing and statement under penalty of perjury re: Carlos Murati's service of process. | 11.50 |

This entry should have been categorized exclusive in fees and costs related to Murati.  (Docket No. 97-2).  Therefore, the total award of fees and costs attributable to Abreu is $9,980.30 and thus, it is recommended that said amount be awarded.[1]

**B.     Carlos Murati**

Defendant is also requesting attorney's fees and costs regarding three matters related to Murati:  Murati's failure to attend a deposition scheduled to be held on December 16, 2009; the efforts made by Ritz Carlton's process servers to serve a subpoena upon Murati in January 2010; and Murati's brief appearance to his deposition on February 25, 2010.  Each one of these incidents will be addressed in turn.

**1. Deposition Scheduled for December 16, 2009**

On December 9, 2009, Murati was served with a subpoena to appear to a deposition on December 16, 2009 at 9:30 a.m. at the law office of McConnell Valdés ("the first deposition"). (Docket No. 55-3).  The day before the deposition, Murati contacted, and eventually met with, counsel Luis R. Amadeo to inform him that he would not be able to attend the deposition because he had hearing with the Equal Employment Opportunity Commission ("EEOC") on December 16,

---

[1] $2,337.30 (total in Docket No. 97-3) + $7,643.00 (total in Docket No. 97-1, that is $15,297.50 minus $11.50, the balance being divided by 2) =$9,980.30.

2010 and because he was making arrangements to take care of health related matters for his mother, a cancer survivor. (Docket No. 77-2). Counsel Amadeo offered to reschedule the deposition. The reality was, however, that Murati had been excused from appearing to the EEOC. Therefore, Murati failed to disclose to counsel Amadeo that a hearing or proceeding that originally had been scheduled by EEOC for December 16, 2010, had been vacated, rescheduled or that his presence was simply not required anymore at said forum. Furthermore, there is no controversy that Murati did not appear to the hearing before the EEOC on December 16, 2010.

Under these circumstances, it is evident that Murati was not truthful to counsel Amadeo. Had counsel Amadeo been aware that Murati did not have any conflict with a EEOC hearing on December 16, 2010, he may have required Murati to attend the deposition as scheduled or perhaps demanded evidence of the particular medical appointments, if any, of Murati's mother. There is no reasonable excuse for Murati's lack of truthfulness as to this matter and thus, attorney fees, costs and expenses related to the deposition scheduled to be held on December 16, 2010 ought to be awarded in Ritz Carlton's favor.

**2. Service of Subpoena in January 2010**

During the hearing held on November 1, 2010, various process servers testified as to their attempts to serve Murati for a deposition set to be held on February 25, 2010 ("the second deposition"). (Docket Nos. 71-3; 118). Aguedo De la Torre ("De la Torre") attempted twice to serve Murati with the subpoena for the second deposition. He went to the address that appeared on the subpoena in Caguas, with the exception that he went to street C-30, rather than C-90 as the subpoena indicates because Diana López González ("López"), de la Torre's wife and also a process server, had found out that there is no C-90 in Turabo Gardens and that property R-4-1 is on C-30, rather than C-90. The first time De la Torre attempted service was on January 10, 2010; he called

several times outloud in front of Murati's residence "Carlos" and "buenas tardes". He received no reponse and did not know whether Murati was in fact in his residence or not. The second time was on January 14, 2010. This time De la Torre was able to speak with Murati's mother, gave her his business card so that she could pass it onward to her son, and told her the purpose of his visit, but once again, Murati was not available to be served. According to Murati's mother, Murati was in San Juan at the time. At this time, de la Torre opted to pass the subpoena to his wife in order for her to attempt to serve Murati for the February 25, 2010 deposition.

López attempted twice to serve Murati for the second deposition (also at C-30 rather than C-90) on different dates, once in the morning between 10:00 a.m. and 11:00 a.m., and once in the afternoon around 2:00 p.m. On both occasions she called and no one answered. Since Murati was already familiar with López, De la Torres opted to pass on the subpoena to his son, Ricardo De la Torre ("Ricardo"), also a process server, but an unfamiliar face to Murati.

Ricardo attempted three times to serve Murati with the second deposition subpoena. The first time, nobody answered. The second time, Murati's mother answered and said that Murati was not available at that moment. The third time, Murati's mother called Murati and Murati finally came out and was served on January 26, 2010. (Docket No. 71-3 at 2).

In all, Ritz Carlton's process servers had to go to Murati's residence in Turabo Gardens on seven occasions. On the second of this seven occasions, Murati's mother already had De la Torres' business card and knew the purpose of De la Torre's visit. Thus, Murati unnecessarily, after failing to appear to the first deposition while not having any purported conflict with the EEOC, caused Ritz Carlton's process servers to make five additional trips to his residence to serve him the subpoena for the second deposition. This kind of dilatory maneuvering is unjustified and thus, attorney's fees, costs and expenses should be awarded for the expense incurred in trying to serve Murati for the

second deposition.

### 3. Deposition Scheduled for February 25, 2010[2]

Defendant also requests attorney's fees and costs due to the unsuccessful attempt to conduct Murati's second deposition on February 25, 2010. (Docket No. 103, ¶¶ 56-60.) On February 25, 2010, Murati, with his attorney Victoria A. Ferrer ("Ferrer"), arrived early at the scheduled deposition. (Docket No. 112-1 at 10, lines 17-20). At that time, defendant's attorney Torruella ("Torruella") immediately opened the record of the deposition and informed Ferrer that Murati had no right to the assistance of counsel during the deposition, but that as a courtesy he would allow Ferrer to be present as long as she would not interrupt or interfere with the deposition. (Docket No. 112-1 at 8, lines 4-16). Ferrer disagreed with Torruellas' "conditions" and argued that she had a right to represent her client.  (Docket No. 112-1 at 8, lines 23-24). Torruella replied to Ferrer as follows:

> ... I'm asking you not to leave the office, you could leave the deposition room, but before you leave the building please come back, so we can empty this to the record and we can choose another date for the deposition to be continued, because we are not going a [sic] chase him around with a new subpoena all over Puerto Rico.

(Docket No. 112-1 at 12, lines 11-16).

Soon thereafter, Ferrer and Murati stepped out of the conference room.  According to Murati's own motion, in its pertinent part:

> Mr. Torruella came out to the elevator area and said that we were obligated to go back into the conference room and we needed to get dates for another deposition. I informed him that I did not have my calendar and could not give him a date at the moment.  <u>He also said that he was not going to insist on the conditions</u>.

(Docket No. 77 at 5) (emphasis added).

---

[2] For purposes of this section of the report, the court relies primarily on the transcript that has been submitted regarding the events that transpired on February 25, 2010.  (<u>See</u> Docket No. 112-1).

Taking Murati's own version of the facts as true, it is clear that prior to leaving the offices of McConnell Valdes, Torruella had removed the "conditions" of Ferrer not being allowed to interrupt or interfere with the deposition. It is irrelevant whether Ferrer never attempted to follow-up with Torruella or viceversa for rescheduling of the deposition; Murati had no valid reason for leaving the deposition on February 25, 2010. Therefore, regardless of the merit or correctness of the "conditions" in controversy, the issue had become moot, as the "conditions" had been removed. Under these circumstances, there is no justification for Murati's departure from the second deposition. Thus, attorney's fees, costs and expenses should be imposed for the total amount of $20,632.30. [3]

WHEREFORE, Ritz Carlton's motion submitting a memorandum of attorney's fees and costs (Docket No. 97) should be approved, with the minor modifications contained in this report, and GRANTED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 12th day of May, 2011.

s/Marcos E. López
United States Magistrate Judge

---

[3] $12,977.80 (the total in Docket No. 97-2) + $7,643.00 +$11.50 (half of the total in Docket No. 97-1 as modified by n.2) = $20,632.30.