```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| JOEL SERRANO,<br><br>**Plaintiff**,<br><br>v.<br><br>RITZ-CARLTON SAN JUAN HOTEL SPA & CASINO,<br><br>**Defendant**. | **CIVIL NO.** 08-1265 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is the Report and Recommendation (Docket No. 123), regarding defendant's motion for attorney's fees and expenses against Carlos Murati ("Murati") and Abreu ("Abreu"), (Docket No. 97). Having considered the magistrate judge's recommendations, Murati's objections, and defendant's response to those objections, the Court **ADOPTS IN PART AND REJECTS IN PART** the Report and Recommendation, (Docket No. 123), and **GRANTS IN PART AND DENIES IN PART** the motion for attorney's fees, (Docket No. 97).

**DISCUSSION**

I.  **Background**

   A.  **Procedural Background**

      The motion for attorneys' fees and costs filed by defendant, (Docket No. 97), arises out of a discovery dispute concerning the deposition of two of plaintiff's fact witnesses, Carlos Murati ("Murati") and Ramon Abreu ("Abreu"). (See Docket

Civil No. 08-1265 (FAB)                                                  2

Nos. 72, 97.)  For various reasons, the original depositions of Murati and Abreu were not held on their scheduled dates.[1]  Defendant subsequently moved for leave to depose those witnesses beyond the original discovery deadline.  (Docket No. 55.)  Shortly before his second deposition was scheduled to begin, Murati filed a motion for a protective order to limit the scope of the documents and testimony to be provided to defendant during the deposition.  (Docket No. 68.)

On March 4, 2010, the Court denied the motion for a protective order and ordered Murati and Abreu personally to pay to defendant all attorneys' fees, costs and expenses incurred by defendant in its efforts to depose and obtain documents from those witnesses.  (Docket No. 72.)  The Court also struck the testimony of Murati and Abreu and precluded its use at trial.  Id.  On March 10, 2010, Murati filed a motion for reconsideration, arguing that there was no basis to deny his motion for a protective order and impose sanctions on him.  (Docket No. 77.)

---

[1] The reasons for Murati's failure to attend his first deposition are discussed further below.  Abreu, who simply forgot to attend his deposition, has not participated in these proceedings or objected to the award of attorney's fees.  Given Abreu's lack of objection, the Court **ADOPTS** the magistrate's conclusion that imposition of sanctions on Abreu in the form of attorney's fees is appropriate.  See Hernandez-Mejias v. General Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334 F.Supp.2d 114, 125-126 (D.R.I. 2004)).  The Court independently considers the appropriate amount of that award later in this opinion and order.

Civil No. 08-1265 (FAB)                                                      3

On May 24, 2010, defendant filed its motion requesting the attorney's fees awarded in the Court's order striking the testimony of Murati and Abreu. (Docket No. 97.) In that motion, defendant requests attorney's fees and costs against Murati in the amount of $20,626.55 and against Abreu in the amount of $9,986.05. Id. at 2. On June 6, 2010, Murati filed an opposition to that motion, arguing that there is no basis to impose the sanctions ordered by the Court, and that the attorney's fees and costs requested by defendant are excessive. (Docket Nos. 98 & 98-1.) Defendant filed a reply on June 28, 2010. (Docket No. 103.) On August 2, 2010, the Court referred the motion for attorney's fees to a magistrate judge. (Docket No. 104.)

On November 1, 2010, Magistrate Judge Marcos Lopez held an evidentiary hearing regarding the issues presented in Murati's motion for reconsideration and defendant's motion for attorney's fees. (Docket No. 118.) Following that hearing, the magistrate judge issued a report and recommendation, concluding that sanctions were justified and recommending, with minor adjustments, the awards requested in the motion for attorney's fees. (Docket No. 123.) On May 26, 2011, Murati filed an objection to the report and recommendation, repeating his arguments that his conduct does not merit sanctions and that attorney's fees should not be awarded to defendant. (Docket No. 125.) On June 27, 2011, defendant filed a response to that objection. (Docket No. 129.)

Civil No. 08-1265 (FAB)                                                   4

**B.   Factual Background**

Murati does not object to the basic factual background presented in the report and recommendation, but rather challenges the magistrate's conclusion that those underlying facts justify the imposition of sanctions. (See Docket No. 125.) Given that lack of objection, the following is a brief recitation of the magistrate's factual findings with regard to Murati, which the Court has independently confirmed from the materials submitted by Murati and defendant, as well as the transcript of the evidentiary hearing held on November 1, 2010. (See Docket Nos. 123 & 130.)

Murati was served with a subpoena to appear at a deposition scheduled for December 16, 2009 at the offices of defendant's attorneys. (Docket No. 123 at 3.) On December 15, 2009, Murati contacted, and eventually met with, Luis R. Amadeo ("Amadeo"), one of defendant's attorneys, to inform him that he would not be able to attend the deposition because he had a hearing with the Equal Employment Opportunity Commission ("EEOC") on the same day, and also needed to make arrangements to take care of health-related matters for his mother, a cancer survivor. Id. at 3-4. Given those excuses, Amadeo offered to reschedule the deposition.

At the time Murati spoke to Amadeo, however, Murati already knew that he had been excused from appearing at the EEOC on the date scheduled for his deposition. Id. at 4. Murati did not

Civil No. 08-1265 (FAB)                                                  5

disclose the fact that he was actually not required to attend the EEOC proceedings at the time Amadeo agreed to reschedule the deposition.  Id.  On December 16, 2009, Murati did not appear at the EEOC despite having represented to Amadeo that his presence was required.  Id.

After rescheduling Murati's deposition, Ritz-Carlton's attorneys attempted to serve Murati with a subpoena for a second deposition through a professional process server, Aguedo de la Torre ("De la Torre").  (Docket No. 123 at 4.)  De la Torre attempted to serve Murati at his home twice, ultimately leaving his business card with Murati's mother and explaining the nature of his visit.  Id. at 4-5.  De la Torre then passed the subpoena on to his wife and son, who are also professional process servers.  Id.  It took five more visits to Murati's home before De la Torre's son was able to serve Murati with the subpoena on January 26, 2010.  Id. at 5.

On February 25, 2010, Murati and Victoria Ferrer ("Ferrer"), the attorney representing him at the time, arrived at the offices of defendant's attorneys for his deposition.  Id.  Upon Murati's arrival, Radames A. Torruella ("Torruella"), another of defendant's attorneys, immediately opened the record and informed Ferrer that Murati had no right to the assistance of counsel during the deposition, but that as a courtesy he would allow Ferrer to be present as long as she would not interrupt or interfere with the

Civil No. 08-1265 (FAB)                                                    6

deposition. Id. at 6. Ferrer disagreed with any conditions being placed on her presence at the deposition and argued that she had a right to represent her client. Id. Torruella requested that, if Murati and Ferrer were planning on leaving his offices, to return to the deposition room first so that a new deposition date could be chosen on the record in order to avoid any further service costs of future subpoenas. Id. After Ferrer and Murati left the conference room, Torruella followed and stopped them, stating that Murati was obligated to return to the conference room and that it was necessary to choose another deposition date. Id. Ferrer responded that she could not immediately find an appropriate date because she did not have her calendar available. Id. At that time, Torruella said that he would not insist on his previously mentioned conditions. Id. Despite Torruella removing the conditions to which Ferrer objected, Murati and Ferrer left the offices of defendant's attorneys without setting up a date ultimately to take Murati's deposition for the purposes of this case. Id.

**II. Legal Analysis**

    **A.   Legal Standard for Reviewing a Magistrate's Findings**

A district court may refer a case to a magistrate judge for pretrial management and a report and recommendation. See 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the

Civil No. 08-1265 (FAB)                                              7

magistrate judge's report.  See 28 U.S.C. §636(b)(1).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this rule precludes further review.  See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).  In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636 (a)(b)(1).  Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object.  See Hernandez-Mejias, 428 F.Supp.2d at 6 (citing Lacedra, 334 F.Supp.2d at 125-126.

    **B.   Murati's Objections**

        **1.   The Contempt Finding**

Murati objects to the basis for finding him in contempt of the Court's discovery orders and, consequently, imposing attorney's fees and costs on him for that contempt. (Docket No. 125.)  Murati specifically objects to the magistrate's conclusion that his conduct during the discovery phase of this case

Civil No. 08-1265 (FAB)                                                        8

warrants those sanctions.  Id.  Having reviewed the report and recommendation, Murati's objection, defendant's response to that objection, and the transcript of the evidentiary hearing held by the magistrate, the Court agrees with the magistrate's conclusions regarding Murati's behavior in response to the deposition subpoenas.  (See Docket Nos. 123, 125, 129, 130.)

It is evident from the materials and testimony submitted to the magistrate that Murati was untruthful when rescheduling his first deposition, unnecessarily complicated the service of the subpoena for the second deposition, and ultimately abandoned the second deposition even after the dispute over the terms of that deposition had been essentially resolved.  See id.  Accordingly, the Court **ADOPTS** as its own opinion the magistrate's conclusions regarding the propriety of imposing sanctions on Murati for his conduct during discovery proceedings.  Having found that Murati's behavior merits sanctions, the Court now turns to determine the appropriate amount of attorney's fees to award in response to defendant's motion.

    **2.   Awards of Attorney's Fees**

In cases where attorney's fees are awarded, the First Circuit Court of Appeals has adopted the "lodestar approach," pursuant to which "the judge calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into

Civil No. 08-1265 (FAB)                                                   9

account the qualifications, experience, and specialized competence of the attorneys involved)." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (citing Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992); United States v. Metro. Dist. Comm'n., 847 F.2d 12, 15-17 (1st Cir. 1988); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984)). The hourly rate to be applied "should be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Tejada-Batista v. Fuentes-Agostini, 263 F.Supp.2d 321, 327 (D.P.R. 2003) (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)). The burden of establishing that the rates requested are comparable with the prevailing rates in the community is on the party moving for the award of attorney's fees. Id. at 328.

After calculating the initial amount of the award, attorney's fees may be "reduced because of (1) the overstaffing of a case, (2) the excessiveness of the hours expended on the legal research or the discovery proceedings, (3) the redundancy of the work exercised, or (4) the time spent on needless or unessential matters." Ramos v. Davis & Geck, Inc., 968 F.Supp. 765, 775 (D.P.R. 1997) (citing Hensley v. Eckerhart, 461 U.S. 424, 432-35 (1983)). The court may further consider the following factors:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the

> case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

Id. (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

Murati presents no specific objection to the magistrate's use of the hourly rate claimed by the attorneys and paralegals who billed time in the supporting documents filed with defendant's motion for attorney's fees. (See Docket No. 125.) Based on the materials submitted, the Court finds the hourly rates suggested in defendant's motion to be reasonable and appropriate for the initial calculation of the total amount of the attorney's fees to be awarded. (See Docket No. 97-1, 97-2.) That initial amount, with a few technical adjustments detailed in the report and recommendation, comes to $20,632.30 for Murati, and $9,980.30 for Abreu. (Docket No. 123.) Having reviewed the time records submitted by defendant, however, it appears that the excessive nature of its attorneys' efforts merit a substantial reduction from those initial calculations. (See Docket Nos. 97-1 & 97-2.)

When augmenting or reducing an award of attorney's fees, courts have a duty to explain the reasons for any substantial adjustment. Metro. Dist. Comm'n., 847 F.2d at 16. The First Circuit Court of Appeals, however, has repeatedly held that the

awarding court's "[f]indings, though necessary, need not be infinitely precise nor need they pry into the innermost recesses of the case."  Id.  Accordingly, the Court need not discuss every entry in the records submitted by defendant and determine the whether each is justified, but rather will discuss only the most prominent examples supporting a significant reduction in the amount of attorney's fees requested.

Many of the time entries underlying the attorney's fees requested by Ritz-Carlton exceed either the scope of the Court's order authorizing the imposition of sanctions or the bounds of reasonableness.  (See Docket Nos. 97-1 & 97-2.)  First, the Court must reiterate that the only attorney's fees and costs to be awarded were those "incurred by . . . [defendant] in its efforts to depose and obtain documents from Messrs. Murati and Abreu." (Docket No. 72.)  Defendant has largely ignored the limited scope of that award and has submitted many unrelated, or only tangentially related, matters as part of its request for attorney's fees.  (See Docket Nos. 97-1, 97-2.)  For example, a substantial amount of the time billed is made up of recurrent charges for vaguely defined activities, such as an entry which describes the work performed as "[c]onsider[ing] orders, consequences and litigation strategy in light of court orders."  (See, e.g., Docket No. 97-1 at 1.) Similar entries, along with charges for communications with plaintiff's attorney regarding other discovery matters, join a litany of

Civil No. 08-1265 (FAB)                                                    12

matters in defendant's supporting documents that do not clearly fall within the scope of the attorney's fees awarded as sanctions. (See Docket Nos. 97-1, 97-2.)

Furthermore, many of the time entries that are actually related to defendant's attempts to depose Murati and Abreu are grossly excessive considering the nature of the work performed. The amount of time spent drafting motions and responses is the most illustrative example, including 34.9 hours billed by defendant's attorneys drafting a ten page opposition to a motion *in limine*. (See Docket Nos. 71, 97-1, 97-2.)  Not only did defendant's attorneys spend too much time drafting pleadings, they also filed completely unnecessary documents, such as a "Notice of Intent to Oppose Motions Within Term To Do So," which is not required by any local or federal rule and serves no useful purpose. (See Docket Nos. 78, 97-1, 97-2.)  In addition to the amount of time billed to prepare that document, the attorney responsible billed nearly another hour that, according to defendant's motion, was spent looking up the local rule that informs parties of the time allotted to respond to motions. (See Docket No. 97-2 at 5.)  Other than the excessive time billed for motion practice, defendant's supporting documents are replete with other instances of excessive, redundant, or duplicative fees, ranging from the amount of time spent preparing for depositions to numerous instances of superfluous

Civil No. 08-1265 (FAB)                                                    13

legal research for simple or routine issues.  (See Docket Nos. 97-1, 97-2.)

The First Circuit Court of Appeals has emphasized that fee awards should "'retain a sense of overall proportion,'" and that "[i]n certain cases, these objectives may be better met by concentrating on what was necessary to be accomplished rather than on a welter of time sheets." Metropolitan Dist. Comm'n., 847 F.2d at 16.  In light of the limited scope of the Court's order awarding attorney's fees, it is clear that the amount of attorney's fees requested in defendant's motion must be significantly decreased. Viewing the relevant discovery dispute in the context of the entire case, and considering the efforts which were actually necessary for its resolution, the attorney's fees requested by defendant shall be reduced by seventy-five percent.  Accordingly, the awards recommended by the magistrate of $20,632.30 against Murati and $9,980.30 against Abreu shall be reduced to $5,158.08 and $2,495.08 respectively.

**III. Conclusion**

The Court has made an independent examination of the entire record in this case and **ADOPTS IN PART AND REJECTS IN PART** the magistrate judge's findings and recommendations.  The magistrate judge's findings are **REJECTED** solely with regard to the amount of the attorney's fees to be awarded against Murati and Abreu as

Civil No. 08-1265 (FAB)                                              14

sanctions.  The remainder of the magistrate judge's findings are **ADOPTED** as the opinion of this Court.

Accordingly, defendant's motion for attorney's fees, (Docket No. 97), is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** inasmuch as attorney's fees shall be imposed on Murati and Abreu as a sanction for their conduct during discovery proceedings. Defendant's motion is **DENIED** with regard to the amount of attorney's fees requested.  As detailed above, attorney's fees shall be imposed on Murati in the amount of $5,158.08 and on Abreu in the amount of $2,495.08.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 10, 2011.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE